UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

NOREEN ASSING,

    Plaintiff,

v.                                    Case No:  2:19-cv-904-JLB-NPM

WAL-MART STORES EAST, LP,

    Defendant.

## ORDER

Plaintiff Noreen Assing slipped and fell on either water or a piece of fruit while doing Thanksgiving dinner shopping in a Walmart store. She now sues Defendant Wal-Mart Stores East, LP ("Wal-Mart") for negligence under Florida law. After careful review of the parties' briefing and viewing the evidence in the light most favorable to Ms. Assing, Wal-Mart's motion for summary judgment is granted. This Court therefore enters judgment in favor of Wal-Mart.

## BACKGROUND

On November 14, 2018, Ms. Assing visited a Walmart store in Lee County, Florida. (Doc. 1-1 at 2, ¶ 6.) She was purchasing groceries for Thanksgiving and following a written shopping list while pushing a shopping cart through the store. (Doc. 28-4 at 8:10–23.) At the time of her fall, she had been in the store for about twenty minutes and had multiple items in her shopping cart, including a turkey, vegetables, and canned food. (Id. at 9:1–10.)

Ms. Assing fell in a main aisle toward the baking section of the store, which was "outside of . . . where the produce was." (Id. at 14:20–15:1; Doc. 28-9 at 23:9–19.) There were many people in the store, and Ms. Assing was "looking up at the board to see . . . where the cakes are" when she "slipped and fell on the floor." (Doc. 28-4 at 22:25–23:17.) She was not looking at the ground and did not see anything on the ground before she slipped. (Id. at 23:10–17.) After she fell, she saw that on the floor "there was water and . . . the floor was dirty with a grape skin that was on the floor also; but the floor was dirty." (Id. at 23:18–23.) Specifically, Ms. Assing observed "spots of water," which formed a puddle that was "[s]maller than a dinner plate" and the "size of a saucer." (Id. at 24:12–19, 25:17–22.) And the grape was smashed, although Ms. Assing does not know whether she smashed the grape. (Id. at 26:1–9; Doc. 31-1 ¶ 6.) She also did not know where the water and grape came from or how long they were on the floor prior to her fall. (Doc. 28-4 at 26:10–15, 28:18–22; Doc. 28-6 at 17:15–18:1).

After the fall, Ms. Assing noticed a liquid on her shirt which was warm, clear, and odorless. (Doc. 28-5 at 4:22–5:10). She did not observe any footprints or recall seeing cart tracks from other shoppers in the liquid, although she did see "cart tracks from [her] cart." (Id. at 6:5–25.) Based on the appearance of track marks in the water, Ms. Assing concluded that the "water, dirt and grapes had been there for a while." (Doc. 28-6 at 18:11–19.)[1]

---

[1] The parties appear to dispute whether Ms. Assing slipped on water or the fruit. As will be discussed, any related factual dispute is immaterial to the

While still at the store, Ms. Assing signed and completed a "Customer Incident Report" in which she stated, "I was walking down the isle [sic] and slipped on something on the floor that looked like a berry and fell and sliding [sic] under the cart. I hit my shins and fell on my but [sic] and back." (Doc. 28-10.) She made no mention of water in the report. (Id.; Doc. 28-5 at 13:12–14:14.)[2]

Keosha Watts, a nearby customer and nursing assistant, witnessed the fall and approached Ms. Assing to help. (Doc. 28-4 at 30:22–31:6; Doc. 28-9 at 6:15–7:16, 8:1–3.) At the location of the fall, Ms. Watts saw "a purple—either grape juice or grape—and you could see the slide marks from her sliding in it." (Doc. 28-9 at 9:5–11.) Ms. Watts did not know how long the fruit had been on the floor or where it came from. (Id. at 10:7–16, 29:3–5.) She did not see water on the floor "until after they had went and got a mop and came and cleaned up the mess on the floor." (Id. at 10:1–5, 25:15–18.)

A maintenance employee at the store, Miguel Pech, was called to the area to clean up after the incident. (Doc. 28-12 at 7:11–15, 10:20–11:3.) He observed and cleaned up "little pieces of a grape or a cherry . . . that had been stepped on already" and "[s]ome marks like out of dry mud." (Id. at 11:14–12:7.) Photographs were

---

resolution of the motion because Wal-Mart is entitled to summary judgment regardless of whether Ms. Assing slipped on either substance.

[2] Ms. Assing contends that the report is inadmissible hearsay and that, even if the report is considered, she did not write it and was "shaken up" at the time. (Doc. 31 at 3, ¶ 14; Doc. 34 at 2.) It is unnecessary to determine whether the report is inadmissible hearsay or could be reduced to admissible evidence, however, because summary judgment in Wal-Mart's favor is warranted even without consideration of the report. See Jones v. UPS Ground Freight, 683 F.3d 1283, 1294 (11th Cir. 2012).

taken of the floor after Ms. Assing's fall.[3]  (Doc. 28-5 at 8:4–20; Doc. 28-11 at 1–6; Doc. 31-3 at 44–46.)

Pursuant to Wal-Mart's Policies and Procedures, all store employees were tasked with inspecting and maintaining the floors on a "continuing, daily basis." (Doc. 28-13 ¶¶ 13–14; Doc. 28-14 at 15:19–24, 16:20–18:5; Doc. 28-15 at 19:3–20:12, 21:5–22, 22:1–5; Doc. 28-16 at 15:17–25.)[4]  These duties require employees to "mak[e] sure that as they're touring their area, [and] as they're working in an area . . . they maintain safe work practices, which includes making sure that there's nothing on the floor." (Doc. 28-15 at 19:3–14.)  Approximately five minutes before Ms. Assing fell, Michael Callies, the store's assistant manager, "walked through and inspected the area" of the fall and "did not see a berry or any debris on the floor."[5]  (Doc. 28-17 ¶¶ 2, 4–5.)  Surveillance footage demonstrates that employees walked through or by the area about ten and three minutes prior to

---

[3] The parties dispute whether the photographs depict liquid on the floor.  (Doc. 31 at 3, ¶¶ 17–18.)  Ms. Assing testified that the water was "off screen." (Doc. 28-5 at 9:16–22.)  At a minimum, the photographs do depict pieces of what appears to be fruit and marks on the floor

[4] Ms. Assing disputes this by reasoning that "the employees are not trained, or are not adequately trained" because "[w]hen everyone is responsible no one is responsible." (Doc. 31 at 4, ¶ 22.)  She also contends that Wal-Mart's Policies and Procedures are inadmissible hearsay. (Id.)  In any event, the deposition testimony, which may be consistent with any policies and procedures, is not hearsay and ultimately immaterial to the resolution of the motion for summary judgment.

[5] Ms. Assing disputes this by observing that, during his deposition, Mr. Callies testified that he had no independent recollection of Ms. Assing's fall and was relying on his notes and prior statement. (Doc. 28-14 at 19:16–21.)  She, however, points to no evidence that affirmatively refutes Mr. Callies's testimony.

the fall.  (Doc. 28-18 at 4:24:20–40, 4:31:41–44).[6]  Afterwards, other customers walked through the area without difficulty.  (Id. at 4:31:44–4:34:10).  But Ms. Assing nonetheless slipped and fell in that area.  (Id. at 4:34:12).

As a result of the fall, Ms. Assing suffers from headaches and injured her right shoulder, right knee, and lower back.[7]  (Doc. 28-2 at 5–6, ¶ 10; Doc. 28-3 at 27:19–28:14.)  She brought a single count of negligence against Wal-Mart in the Circuit Court of the Twentieth Judicial Circuit in and for Lee County, Florida.  (Doc. 1-1.)  The action was removed to federal court.  (Doc. 1.)  It is undisputed that this Court has jurisdiction based on complete diversity of the parties and an amount in controversy in excess of $75,000.  (Id. ¶¶ 9–31.)

---

[6] Ms. Assing disputes that the employees who walked through the area inspected the floor.  (Doc. 31 at 5, ¶ 24.)  She asserts that the unidentified first employee "is more concerned with avoiding two customers in front of her and completely sidesteps the area," that the second "is pulling a huge stocking cart full of boxes which mask his view," and that Mr. Callies "is no where to be seen."  (Id.).  The Court agrees that the surveillance footage does not clearly show that any employee thoroughly inspected the floor prior to Ms. Assing's fall.  See Shaw v. City of Selma, 884 F.3d 1093, 1097 n.1 (11th Cir. 2018) ("[W]here the recording does not clearly depict an event or action, and there is evidence going both ways on it, we take the [non-movant's] version of what happened.").  Ms. Assing further observes in her response that the footage shows that a store employee "pushed a mop bucket on top of a janitorial cart making the mop bucket even more unstable, with a mop hanging off the side, and mop water sloshing out of the bucket, crossing over the exact same spot where Plaintiff fell approximately 42 minutes prior to her slip and fall," and she asserts that she fell in a puddle of water "left behind by the Walmart Associate."  But the evidence she cites does not establish this assertion.  (Doc. 31 at 10, ¶¶ 53, 54; Doc. 31-1 ¶ 13.)

[7] There are several disputes relating to the extent of Ms. Assing's injuries, causation, and the parties' expert witness disclosures.  (Doc. 31 at 6–8, ¶¶ 28–40.)  Absent a showing of Wal-Mart's actual or constructive knowledge, these disputes are immaterial to the resolution of Wal-Mart's motion for summary judgment.

To support her negligence claim, Ms. Assing alleges that she "slipped and fell because the Defendant negligently maintained premises by allowing water to accumulate on the floor," and that it breached its duty owed to her by negligently "failing to adequately maintain the food aisle by allowing water to accumulate on the floor," "failing to inspect or adequately inspect the floors of the food aisle," "failing to inspect or adequately warn [her] of the danger of the food aisle," "failing to correct or adequately correct the unreasonably dangerous condition of the food aisle," and "displaying goods on display shelves and designing traffic patterns in such a manner as to actually distract shoppers." (Doc. 3 at 2–3, ¶¶ 8–10.) With discovery complete, Wal-Mart now moves for summary judgment.[8] (Doc. 28.)

---

[8] In her response to the motion, Ms. Assing requests that the motion be stricken due to its length. (Doc. 31 at 1). The Court has previously granted Wal-Mart's motion to file excess pages, and this request is due to be denied. (Docs. 32, 35.) Wal-Mart's request in its reply to strike Ms. Assing's response is likewise due to be denied for failure to comply with the Local Rules. (Doc. 34 at 1.)

Also in her response, Ms. Assing raises several issues related to discovery and purports to move under Rule 56(d), Fed. R. Civ. P., "for leave to allow [her] to file a Motion to Compel the depositions of Chris Schnapp, Cindy Coffee, and the asset prevention personnel who saved the video that day." (Doc. 31 at 19–20; Doc. 34 at 3 n.3.) The request is due to be denied.

As the Eleventh Circuit has explained, "Rule 56 of the Federal Rules of Civil Procedure contemplates that a court may grant summary judgment without the parties having conducted discovery." Edgewater House Condo. Ass'n v. City of Fort Lauderdale, 825 F. App'x 658, 664 (11th Cir. 2020) (internal quotation marks and citation omitted). "If a summary judgment motion is filed before discovery, the party opposing summary judgment may move the court under Rule 56(d) to permit the discovery necessary to oppose the motion." Id. (internal quotation marks, citation, and brackets omitted). However, the movant must "specifically demonstrate how postponing the court's ruling would have enabled him, by discovery or other means, to rebut [the opposing party's] showing of the absence of a genuine issue of fact." Id. (citation omitted). Rather than move for her requested relief in a separate motion, Ms. Assing's request is in her opposition to the motion

## LEGAL STANDARD

In diversity actions, federal courts apply state substantive law and federal procedural law. Pussinen v. Target Corp., 731 F. App'x 936, 938 (11th Cir. 2018) (citation omitted). Because summary judgment is a procedural matter, the Federal Rules of Civil Procedure govern. Id. Rule 56(a) states that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." If this showing is made, "the burden shifts to the nonmoving party to come forward with specific facts showing that there is a genuine issue for trial." Shaw v. City of Selma, 884 F. 3d 1093, 1098 (11th Cir. 2018) (internal quotation marks and citation omitted).

"A fact is 'material' if it has the potential of 'affect[ing] the outcome of the case.'" Id. (citation omitted). "And to raise a 'genuine' dispute, the nonmoving party must point to enough evidence that 'a reasonable jury could return a verdict

---

for summary judgment. In any event, the discovery deadline has elapsed, and Ms. Assing only sought to continue trial and reopen discovery more than six months after Wal-Mart's motion for summary judgment. (Docs. 16, 46.) Neither request includes a memorandum with supporting authority as required by the Local Rules. Nor has Ms. Assing included in her request an affidavit or declaration as required by Rule 56(d). See Ashmore v. Sec'y, Dep't of Transp., 503 F. App'x 683, 686 (11th Cir. 2013); but see Frazier v. Doosan Infracore Int'l, Inc., 479 F. App'x 925, 931 (11th Cir. 2012) (waiving requirement).

In other words, Wal-Mart's motion for summary judgment is not premature. See Est. of Todashev by Shibly v. United States, 815 F. App'x 446, 450 (11th Cir. 2020) (noting that "Rule 56(d) provides shelter against a premature motion for summary judgment"). And Ms. Assing has not specifically demonstrated how postponing the ruling on summary judgment would enable her to rebut Wal-Mart's showing of the absence of a genuine issue of material fact as to actual and constructive knowledge. Accordingly, the request is denied.

for [him].'"  Id. (citation omitted).  "When considering the record on summary judgment 'the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'"  Id. (citation omitted).  "[A]n inference is not reasonable if it is only a guess or a possibility, for such an inference is not based on the evidence but is pure conjecture and speculation."  Daniels v. Twin Oaks Nursing Home, 692 F.2d 1321, 1324 (11th Cir. 1982) (internal quotation marks and citation omitted).

## DISCUSSION

Because Wal-Mart did not have actual or constructive knowledge of an unsafe condition and failed to take action to remedy it, summary judgment in Wal-Mart's favor on Ms. Assing's one count of negligence is warranted.

### I. Wal-Mart did not have actual or constructive knowledge.

In Florida, an individual who "slips and falls on a transitory foreign substance in a business establishment . . . must prove that the business establishment had actual or constructive knowledge of the dangerous condition and should have taken action to remedy it."  Pussinen, 731 F. App'x at 937 (quoting Fla. Stat. § 768.0755(1)).[9]  Constructive knowledge exists where "(a) [t]he dangerous

---

[9] Wal-Mart owed Ms. Assing a duty: "(1) to take ordinary and reasonable care to keep its premises reasonably safe . . . ; and (2) to warn of perils that were known or should have been known to [Wal-Mart] of which [Ms. Assing] could not discover."  Norman v. DCI Biologicals Dunedin, LLC, 301 So. 3d 425, 428 (Fla. 2d DCA 2020) (citation omitted).  But because Ms. Assing slipped "on a transitory foreign substance in a business establishment," the requirements of section 768.0755 apply.  Encarnacion v. Lifemark Hosp. of Fla., 211 So. 3d 275, 278 (Fla. 3d DCA 2017) ("[W]here a business invitee slips and falls on a 'transitory substance' in a business establishment . . . proof of the breach element of the claim against an

condition existed for such a length of time that, in the exercise of ordinary care, the business establishment should have known of the condition; or (b) [t]he condition occurred with regularity and was therefore foreseeable." Id.

As a threshold matter, Ms. Assing is unsure whether the purported water or the piece of fruit on the aisle floor constituted the unsafe condition which caused her to slip and fall. Although she alleges in her complaint that Wal-Mart's negligence is premised on the presence of water, she testified that she is not certain whether she slipped on water or fruit. (Doc. 28-4 at 26:1–9; Doc. 28-5 at 14:12–15:10 ("It could have been the berry.")) Further, her Customer Incident Report and the deposition testimony of Ms. Watts and Mr. Pech do not mention the presence of any water prior to Mr. Pech cleaning the floor. (Doc. 28-10; Doc. 28-9 at 9:5–11, 10:1–5, 25:15–18; Doc. 28-12 at 11:14–12:7.)[10]

---

owner of the establishment is statutorily constrained . . . ."). Accordingly, to the extent Ms. Assing alleges a claim premised on a negligent mode of operation, the claim fails. LaPosa v. Wal-Mart Stores E., L.P., No. 2:19-cv-361-FtM-99UAM, 2019 WL 2537790, *1–3 (M.D. Fla. June 20, 2019). Additionally, absent actual or constructive knowledge, any negligence claim premised on a failure to warn also fails. Cf. Dominguez v. Publix Super Mkts., Inc., 187 So. 3d 892, 894 (Fla. 3d DCA 2016) (noting that issue was not whether defendant failed to warn plaintiff where unsafe condition of spill was open and obvious). Any remaining theories of negligence are without merit.

[10] To the extent Ms. Assing attempts to clear up this confusion in her subsequent affidavit, the Court agrees with Wal-Mart that her averments contradict her prior deposition testimony without a sufficient explanation. (Doc. 34 at 2-3); see Van T. Junkins and Assocs., Inc. v. U.S. Indus., Inc., 736 F.2d 656, 657 (11th Cir. 1984) ("When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony."). Indeed, despite her earlier testimony that she could have slipped on a berry, in her subsequent affidavit she averred that she "was pushing the Wal-Mart shopping cart down the aisle and

This confusion as to whether Ms. Assing slipped on water or a piece of fruit is significant because she must prove that Wal-Mart had actual or constructive knowledge of the unsafe condition that caused her fall. In other words, Wal-Mart's actual or constructive knowledge of water on the floor would be insufficient to establish Ms. Assing's claim if she instead slipped on a grape. See Espinoza v. Target Corp., 843 F. App'x 168, 171 (11th Cir. 2021). In any event and in an abundance of caution, the Court will address Wal-Mart's actual and constructive knowledge as to both water and fruit. As discussed below, there is no genuine dispute as to a material fact, and Ms. Assing cannot show that Wal-Mart had actual or constructive knowledge of either condition.

**1. Actual Knowledge**

To establish actual knowledge of a dangerous condition, Ms. Assing must show that Wal-Mart's employees or agents knew of the dangerous condition or created it. See Barbour v. Brinker Fla., Inc., 801 So. 2d 953, 957 (Fla. 5th DCA 2001). In short, Ms. Assing cannot show actual knowledge.

First, there is simply no evidence that any employee at the Walmart store knew about liquid or fruit on the aisle floor before Ms. Assing fell. Although the record evidence reflects that up to three Wal-Mart employees were in the area

---

slipped and fell on a puddle of water the size of a saucer," and that "[w]hile slipping [she] also stepped on and kicked out from under [her] a grape which was left on the floor." (Doc. 31-1 at 1, ¶¶ 3, 6.) Even if her subsequent averments are credited, however, summary judgment in Wal-Mart's favor is warranted.

within ten minutes of the fall, Ms. Assing points to no evidence that any employee—or customer for that matter—observed liquid or fruit on the floor prior to the fall.

Second, there is no evidence that Wal-Mart employees created the dangerous condition.[11] Although Ms. Assing observes that a store employee "pushed a mop bucket . . . [with] mop water sloshing out of the bucket, crossing over the exact same spot where Plaintiff fell approximately 42 minutes prior to her slip and fall," she cites no evidence supporting that water spilled from the mop bucket or that any water from the bucket caused her fall. (Doc. 31 at 10, ¶¶ 53–54.) The surveillance footage certainly does not show any spillage.[12] (Doc. 28-18 at 3:49:42–3:50:00); see Oliver v. Winn-Dixie Stores, Inc., 291 So. 3d 126, 129 (Fla. 4th DCA 2020) (explaining in a section 768.0755 case that unclear video "does not create a material issue of fact"). Similarly, there is no indication of "active" negligence. See, e.g., Glaze v. Worley, 157 So. 3d 552 (Fla. 1st DCA 2015).

In summary, the record evidence does not support a finding that Wal-Mart had actual knowledge of the condition that caused Ms. Assing's fall.

---

[11] Moreover, Ms. Assing's negligence claim, as pleaded, does not allege that Wal-Mart created the dangerous condition, and Ms. Assing cannot raise a new theory of liability in response to a motion for summary judgment. See Colardo-Keen v. Rockdale Cnty., 775 F. App'x 555, 571 (11th Cir. 2019).

[12] Although Ms. Assing relies on the video to defend against Wal-Mart's motion for summary judgment and avers that it is "a true and accurate depiction of [her] fall and the area where [she] fell," (Doc. 31-1 at 2, ¶ 12), she also contends that the evidence is inadmissible because Wal-Mart did not disclose the name of its records custodian. Even assuming the video evidence is inadmissible, summary judgment is warranted in Wal-Mart's favor without its consideration.

### 2. Constructive Knowledge

As noted, a plaintiff can prove constructive knowledge by showing that: (1) the dangerous condition existed for such a length of time that the defendant should have known of the condition through its exercise of ordinary care, or (2) the condition occurred with such regularity that it was foreseeable. Fla. Stat. § 768.0755. Here, Ms. Assing makes neither showing.

First, Ms. Assing has not shown that the condition existed for such a length of time that Wal-Mart should have known of it through its exercise of ordinary care. No witness, including Ms. Assing, testified that he or she observed water or fruit on the aisle floor before the fall or otherwise knew how long the fruit or any water had been on the floor.

But the analysis does not stop there. Ms. Assing can also prove the passage of time through circumstantial evidence, which "may include dirt, scuffing, or tracks in a substance." Pussinen, 731 F. App'x at 937 (internal quotation marks and citation omitted). A conclusory statement that "the floor was wet" and Ms. Assing slipped and fell is insufficient. Vallot v. Logan's Roadhouse, Inc., 567 F. App'x 723, 726 (11th Cir. 2014) (citing Delgado v. Laundromax, Inc., 65 So. 3d 1087, 1088–89 (Fla. 3d DCA 2011)). "[T]he record must contain additional facts to create a permissible inference regarding the amount of time the [liquid] had been on the floor." Palavicini v. Wal-Mart Stores East, LP, 787 F. App'x 1007, 1013 (11th Cir. 2019) (citation omitted); see also Espinoza, 843 F. App'x at 171 (collecting Florida

cases affirming summary judgment where plaintiff did not establish how long substance was on floor).

For starters, as Wal-Mart correctly contends, the record evidence establishes that an insufficient amount of time elapsed between Ms. Assing's fall and the most recent inspection to support a finding of constructive knowledge. (Doc. 28 at 19.) It is undisputed that the store's employees were tasked with inspecting and maintaining the floors on a continuing basis, and the surveillance video shows that employees passed the area of the fall ten minutes and three minutes prior to the fall. Cf. Espinoza, 843 F. App'x at 173 (failure to identify inspecting employee does not constitute evidence of constructive knowledge).

But even if the video does not support a finding that the two employees thoroughly inspected the area, Ms. Assing has not adequately refuted Mr. Callies's averments that, five minutes prior to the fall, he "walked through and inspected the area of [the fall] . . . and did not see a berry or any debris on the floor."[13] (Doc. 28-17 ¶ 5.); see, e.g., Russo v. Moran Foods, LLC, No. 2:17-cv-14314, 2018 WL 2694535, at * 3 (S.D. Fla. Apr. 9, 2018) (five minutes between inspection and fall insufficient); Wal-Mart Stores, Inc. v. King, 592 So. 2d 705, 707 (Fla. 5th DCA 1991) (ninety minutes). And in any event, courts have found that a failure to inspect does not establish constructive knowledge. See Espinoza, 843 F. App'x at 172.

---

[13] As discussed, although Mr. Callies testified that he had no independent recollection of the fall, he clarified that he was relying on his notes and prior statement. (Doc. 28-14 at 19:16–21.) Further, Ms. Assing does not explain how Wal-Mart's failure to identify Mr. Callies in the surveillance footage refutes his averment that he inspected the area.

Turning to the presence of water, Ms. Assing points to no circumstantial evidence proving that the water had been on the floor long enough to support a finding of constructive knowledge. The fact that the water was "warm" is insufficient. Espinoza, 843 F. App'x at 173; (Doc. 28-5 at 4:22–5:10). And, apart from Ms. Assing's unsupported speculation that water spilled from a mop bucket, she fails to identify the source of the water, such as a leak or rain. Berbridge v. Sam's E., Inc., 728 F. App'x 929, 932–33 (11th Cir. 2018) (drip from AC unit); Doudeau v. Target Corp., 572 F. App'x 970, 972 (11th Cir. 2014) (rain). Lastly, although Ms. Assing relies on cart tracks to prove the passage of time, she testified that she did not observe footprints or recall tracks from other shoppers in the liquid, although she saw "cart tracks from [her] cart." (Doc. 28-5 at 6:5–25.)[14]

In her response, Ms. Assing makes much of the fact that, in addition to "vertical" tracks, the photographs depict "horizontal" tracks which she could not have created. (Doc. 31 at 10, ¶ 50.) As noted, however, Ms. Assing testified that she did not recall observing other track marks after she fell. In fact, when she was

---

[14] She also testified that, based on the appearance of track marks in the water, the "water, dirt and grapes had been there for a while." (Doc. 28-6 at 18:11–19.) This appears to contradict her testimony that she did not see other track marks in the water. In any event, this testimony—and her assertions that the water and floor were "dirty"—is vague, speculative, and, ultimately, insufficient to show the passage of time. (Doc. 31-1 at 1, ¶¶ 8, 10); Berbridge, 728 F. App'x at 932 (affirming summary judgment where, "[w]hile [plaintiff] presented evidence of the source of a 'dark' and 'dirty' substance, . . . [plaintiff] did not provide any additional detail about what she meant by these terms"). Further, she has not shown that the liquid was not "dirty" when it reached the ground. Berbridge, 728 F. App'x at 933–34; Encarnacion, 211 So. 3d at 278 (requiring an additional "plus" fact for reasonable jury to conclude that substance in original condition was not oily, dirty, and dark).

shown the "scuff marks" in the photographs, she appeared to speculate that she made the marks:

> The left skidmarks, yeah. I fell going backwards. You're pushing the cart; right? And my leg started sliding and it went under me; right? So it could be a possibility that coming this way I'm turning the cart so I can avoid the fall.

(Doc. 28-6 at 20:18–21:25.)  In any event, Ms. Assing points to no evidence reflecting that the horizontal tracks existed at the time that she fell, or that the horizontal tracks even traversed the puddle of water that caused her to fall.  See, e.g., Bleers v. Wal-Mart Stores E., LP, No. 2:19-cv-806, 2021 WL 2106531, at *4 (M.D. Fla. May 25, 2021) (noting possibility that purported "signs of age" were created between fall and subsequent inspection of area).  Indeed, despite Ms. Assing's assertions to the contrary and her testimony that water was "off screen," (Doc. 28-5 at 9:16–22), the photographs do not clearly depict water on the floor.

The piece of fruit is likewise insufficient to establish constructive knowledge. The record evidence does not reflect any biological deterioration of the fruit, such as mold or shriveling.  See Owens v. Publix Supermarkets, Inc., 802 So. 2d 315, 329 (Fla. 2001) (aged banana); Reina-Leon v. Home Depot U.S.A. Inc., No. 8:18-cv-2262, 2019 WL 1745378, at *3 (M.D. Fla. Apr. 18, 2019) (shriveled grape). And although the fruit was smashed, Ms. Assing acknowledges that she could have kicked or stepped on the fruit herself.  (Doc. 28-4 at 26:1–9; Doc. 31-1 at 1, ¶ 6.)  Indeed, Ms. Watts testified that, as to the grape, "you could see the slide marks from [Ms. Assing] sliding in it."  (Doc. 28-9 at 9:5–11.)  At bottom, an inference as to the length of time any substance was on the aisle floor would require speculation, which

"cannot create a genuine dispute of material fact to defeat summary judgment." Espinoza, 843 F. App'x at 173.

Nor has Ms. Assing shown that the dangerous condition occurred with such regularity that it was foreseeable. Indeed, even if the store had a reputation for being "dirty," there is no evidence that water accumulated or that fruit fell on the aisle floors outside the produce section with such regularity that it was foreseeable. Instead, Ms. Assing's testimony relates to "cans," "canned stuff, like the red beans," and "vegetables" and "stuff on the floor" in the produce section. (Doc. 28-4 at 12:6–13:3.) And although Ms. Watts testified that the store's floor is often dirty, she did not identify any specific substance observed on the floor or its location. (Doc. 28-9 at 30:2–14.) Further, notwithstanding Ms. Assing's reliance on other litigation with purportedly similar facts, (Doc. 31 at 6, ¶ 25), she had visited the store at issue about twelve times and had never slipped and fell or witnessed someone else slip and fall. (Doc. 28-4 at 10:15–23, 14:8–10.). Even viewing the evidence in a light most favorable to Ms. Assing and drawing all reasonable inferences in her favor, the record evidence does not establish that the dangerous condition that caused her fall occurred with such regularity as to support a finding of constructive notice.

Accordingly, absent Wal-Mart's actual or constructive knowledge of the condition that caused Ms. Assing's slip and fall, summary judgment in Wal-Mart's favor is warranted.

## CONCLUSION

Defendant Wal-mart Stores East, LP's Motion for Final Summary Judgment (Doc. 28) is **GRANTED**.  The Clerk is **DIRECTED** to enter judgment in favor of Defendant and against Ms. Assing, terminate any pending deadlines and motions, and close the file.

**DONE AND ORDERED** this 18th day of August, 2021.

_____
JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE